1

2

3      **UNITED STATES DISTRICT COURT**

4      **EASTERN DISTRICT OF CALIFORNIA**

5

| | |
|---|---|
| **CAIN GONZALEZ** | **1:06-CV-01751-OWW-TAG** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| **v.** | |
| **CITY OF FRESNO, CHIEF JERRY DYER, COUNTY OF MADERA, SHERIFF JOHN ANDERSON and DOES 1 through 10, inclusive,** | |
| **Defendants.** | |

12

13                    **I.  <u>INTRODUCTION</u>**

14         **Before the court are two motions for summary judgment or, in**

15    **the alternative, summary adjudication.  One motion is brought by**

16    **Defendants City of Fresno and Chief Jerry Dyer (the "Fresno**

17    **defendants"), and the other motion is brought by Defendants County**

18    **of Madera and Sheriff John Anderson (the "Madera defendants").  The**

19    **motions are directed at the claims asserted by Plaintiff Cain**

20    **Gonzalez ("Plaintiff") in the Third Amended Complaint.[1]**

21         **Also before the court is a motion, brought collectively by all**

22    **Defendants, to dismiss Plaintiff's action as a sanction for**

23    _____

24         [1] **Plaintiff's then attorney, Bruce Nickerson, signed the Third**
      **Amended Complaint, which was filed August 11, 2007.  Over a year**
25    **later, Plaintiff's attorney filed a motion to withdraw from the**
      **action. (Doc. 64.)  After a hearing on the matter, the motion was**
26    **granted on December 12, 2008. (Doc. 77.) Subsequently, in January**
      **2009, Plaintiff filed two written notices stating that he would**
27    **represent himself, *i.e.*, proceed in *pro per*. (Doc. 79 & 80.)**
      **Plaintiff continues to represent himself.**
28

                                   **1**

1  Plaintiff's failure to comply with Magistrate Judge Theresa
2  Goldner's order of November 25, 2008 (Doc. 74).

3     The following background facts are taken from the parties'
4  submissions in connection with the motions and other documents on
5  file in this case.[2]

6                        II.   **BACKGROUND**

7     This is a civil rights case that arises out of Plaintiff's
8  arrest on November 8, 2005, and Plaintiff's subsequent
9  incarceration at the Madera County Jail.

10 A.   **Plaintiff's Arrest**

11    At 5:00 a.m. on November 8, 2005, Fresno Police officers were
12 dispatched to 5235 E. Wildflower in response to a 911 domestic
13 disturbance call. (Doc. 88 at 1-2.)[3] When the officers arrived,
14 they found a car backed into the driveway of the residence and
15 partially in the street. The officers saw two occupants in the car
16 (later identified as Plaintiff and his brother, Mark Gonzalez).
17 (*Id.* at 2.) Plaintiff and Mark exited the car, became
18 confrontational and demanded that the officers leave. Plaintiff and
19 Mark refused to identify themselves to the officers who were
20 attempting to investigate the reported disturbance. (*Id.*)
21 Ultimately, Plaintiff and Mark were arrested for obstructing and

22

23    [2] "A district court does not, of course, make 'findings of
24 fact' in ruling on a summary judgment motion. Findings of fact are
   made on the basis of evidentiary hearings and usually involve
25 credibility determinations." *See Rand v. Rowland*, 154 F.3d 952, 957
   n.4 (9th Cir. 1998).
26

27    [3] Document 88 is a Scheduling Conference Order dated March 26,
28 2009. Information is taken from this Scheduling Conference Order
   for background purposes only.

                              2

delaying the officers in the performance of their duties. The officers purportedly found several baggies of contraband on Plaintiff and Mark when they were searched subsequent to their arrest. (*Id.*) After their arrest, Plaintiff and Mark were booked into the Fresno County Jail.

According to Plaintiff's complaint, after he was handcuffed at the residence, "Defendant Officer Doe 1" accused Plaintiff of possessing drugs. (TAC ¶ 16.)[4] Plaintiff alleges that "Defendant officer Doe 1 perceived that Plaintiff . . . was gay and said: 'I know where you faggots keep your shit.'" (*Id.*) Then officer Doe 1 "thrust one or more digits of his hand (either a finger, thumb, or both) up the anus of Plaintiff searching for drugs." (*Id.* at ¶ 17.) This act allegedly "ruptured the lining of Plaintiff's rectum causing Plaintiff excruciating plain." (*Id.*)

A few weeks later, on November 25, 2005, Plaintiff was transported from the Fresno County Jail to the Madera County Jail due to an outstanding Madera County warrant.

B.    Plaintiff's Incarceration At Madera County Jail

As alleged, "Plaintiff, a gay man, had been in protective custody [while] in the Fresno County [J]ail." (TAC ¶ 34.)  After being transferred to the Madera County Jail, Plaintiff claims that authorities initially placed him in protective custody. (*Id.*) Allegedly, however, "four days later, Plaintiff was summarily placed in the open prison population and was immediately assaulted by gang members, who slashed his ear and broke his eardrum." (*Id.* at ¶ 35.)

---

[4] "TAC" stands for Third Amended Complaint.

3

**C.    Plaintiff's Claims In The Third Amended Complaint**

While the complaint is not a model of clarity, Plaintiff alleges various claims under 42 U.S.C § 1983 that stem from his arrest and his subsequent incarceration at the Madera County Jail. As a practical matter, the claims that stem from Plaintiff's arrest (and the associated digital search of his anal cavity) involve the two Fresno defendants, *i.e.*, the City of Fresno and Jerry Dyer, Chief of the Fresno Police Department.  The claims that stem from Plaintiff's incarceration at the Madera County Jail (and the associated altercation) involve the Madera defendants, *i.e.*, the County of Madera and John Anderson, Sheriff of the Madera County Sheriff's Department.  Both Dyer and Anderson are sued in their individual and official capacities. (TAC at ¶¶6, 10.)

Plaintiff's first § 1983 claim is for an alleged equal protection violation under the Fourteenth Amendment. Plaintiff asserts that "individual Defendants excepting Defendant ANDERSON" "targeted men who were gay, their family and friends, and Hispanics who were minding their own business and falsely charged them with drug offenses and assault[ed] them under color of law." (*Id.* at ¶ 42.) Plaintiff is a purported victim of this targeting.

Plaintiff's second § 1983 claim is for a Fourth Amendment violation.[5] Plaintiff claims that "individual Defendants with the exception of Defendant ANDERSON" violated his right to be free from unreasonable searches and seizures. (*Id.* at ¶ 43.) Plaintiff claims he was arrested without probable cause. (*Id.* at ¶ 44.)  Plaintiff

---

[5] In this case, the Fourth Amendment is made applicable by virtue of the Fourteenth Amendment.

**4**

believes that "he was arrested because Fresno police have a policy and practice of assaulting gay Hispanic men." (*Id*. at ¶ 26.)

Plaintiff's third § 1983 claim is entitled "Custom and Policy." Plaintiff asserts that Chief Dyer and Sheriff Anderson "established, maintained, encouraged, allowed, and/or ratified a custom, practice or policy of providing inadequate training, supervision, instruction, oversight, and discipline to Fresno police officers, thereby failing to adequately discourage constitutional violations and tacitly agreeing to violate Plaintiff's constitutional rights." (*Id*. at ¶ 47.)

D.   <u>The Motions For Summary Judgment/Summary Adjudication</u>

As for the Fresno defendants, with respect to the official capacity claim against Chief Dyer, defendants argue that it should be dismissed because it is redundant of the claim against the City of Fresno, a named defendant.  With respect to Dyer's individual liability, defendants move for summary adjudication on the ground that Dyer lacked the requisite involvement in the asserted constitutional violations to be held individually liable under § 1983.  As to the City, defendants move for summary judgment on the ground the Plaintiff lacks sufficient *Monell* evidence to hold the City liable under § 1983.

As for the Madera defendants, with respect to the official capacity claim against Anderson, defendants argue that it should be dismissed because it is redundant of the claim against the County of Fresno, a named defendant.  With respect to Anderson's individual liability, defendants move for summary adjudication on the ground that Anderson lacked the requisite involvement in the asserted constitutional violations to be held individually liable

**5**

under § 1983.  As to the County, defendants move for summary judgment on the ground that Plaintiff lacks sufficient *Monell* evidence to hold the County liable under § 1983.

Dyer and Anderson also claim that qualified immunity shields them from liability for damages.

### III. <u>SUMMARY JUDGMENT/ADJUDICATION STANDARD</u>

"The standards and procedures for granting partial summary judgment, also known as summary adjudication, are the same as those for summary judgment." *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun* v. *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own

pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Id.*

"[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## IV.   DISCUSSION AND ANALYSIS

**A.   The Fresno Defendants**

**1. Chief Dyer**

In a § 1983 case, an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In fact, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, . . . , local government units can be sued directly for damages and injunctive or declaratory relief." *Graham*, 473 U.S. at 167 n.14. Given that an official capacity claim is treated as a claim against the local governmental entity, when a plaintiff sues an officer of a local governmental entity in his official capacity *and* also sues the

**7**

local entity itself, the official capacity claim is redundant of the claim against the entity and the official capacity claim can be dismissed. *See Center For Bio-Ethical Reform, Inc. v. L.A. County Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008); *Megargee v. Wittman*, 550 F. Supp. 2d 1190, 1206 (E.D. Cal. 2008); *Luke v. Abbott*, 954 F. Supp. 202, 204 (C.D. Cal. 1997).

Plaintiff has sued Chief Dyer in his official capacity and the City itself.   The official capacity claims against Dyer are redundant of the claims against the City; therefore, summary judgment is GRANTED on the claims against Dyer in his official capacity.

With respect to individual liability, the Fresno defendants submit evidence to demonstrate that Chief Dyer lacked the requisite involvement in the alleged constitutional violations to be held individually liable under § 1983.   Plaintiff does not dispute any of the material facts that the Fresno defendants have submitted on this issue, *i.e.*, Plaintiff has not submitted an opposition to the Fresno defendants' separate statement of undisputed material facts (or otherwise challenged the Fresno defendants' facts with contrary facts).

In order to be liable under § 1983, the individual defendant must have been involved, in some manner, in the underlying conduct that gave rise to the alleged constitutional violation. In order for a person "to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of

**8**

personal participation by the defendant.").

When, as here, the defendant is a supervisory figure, a sufficient degree of "personal participation" can exist with or without the defendant's direct "on-the-scene" participation in the alleged rights deprivation. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (recognizing that "[s]upervisory liability [can] exist even without overt personal participation in the offensive act."). A supervisor, however, cannot be liable for the acts of subordinates on any theory of vicarious liability. *Id.* at 645-46.

The Ninth Circuit has explained various ways in which a supervisory figure (like Chief Dyer) can be individually liable in a § 1983 case. A supervisor can be liable if he or she directed his or her subordinates to commit the offensive act. *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1202 (9th Cir. 2009). Liability also can attach when the supervisor "set[s] in motion a series of acts by others . . ., which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005) (modifications in original) (internal quotation marks omitted). Even when the supervisor does not direct his or her subordinates to commit the offensive act, or set in motion a series of acts by others which caused others to inflict the constitutional injury, the supervisor can still be liable if he or she "knew of the violations" being committed by subordinates yet "failed to act to prevent them." *Hydrick v. Hunter*, 500 F.3d 978, 988 (2007).[6] The

---

[6] A "supervisor's mere knowledge of his subordinate's discriminatory purpose" does not, however, "amount[] to the supervisor's violating the Constitution." *Ashcroft v. Iqbal*, 556

Ninth Circuit also recognizes that "[s]upervisory liability [can be] imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005).   Finally, a supervisory official can be liable if her or she "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen*, 885 F.2d at 646.

While the Ninth Circuit has articulated various circumstances in which a supervisor can be liable in a § 1983 case, the common theme is that to impose individual liability on a supervisor, the supervisor must have either "t[aken] part" in the alleged constitutional violation or in some manner "caused the constitutional violation[]" through his or her own "culpable action or inaction." *Menotti*, 409 F.3d at 1149; *see also Jones v. Williams*, 297 F.3d 930, 937 (9th Cir. 2002) (stating that "[a] supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.") (emphasis removed).

---

U.S. __, 129 S. Ct. 1937, 1949 (2009). "In a § 1983 suit or a *Bivens* action-where masters do not answer for the torts of their servants-the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

Based on the undisputed facts and Chief Dyer's declaration, the Fresno defendants argue that there is no evidence to support the imposition of individual liability on Dyer.  The undisputed facts and Dyer's declaration show that Dyer had no participation in the arrest of plaintiff, did not direct his subordinates to make the arrest (let alone search Plaintiff's anal cavity), had no knowledge of the arrest at the time (so Dyer could not have intervened), and that Dyer did not establish, implement or approve of any alleged policy, custom or practice that purportedly caused the constitutional violations. (*See* Doc. 61-3 at 2; Dyer Decl. ¶¶3-5.) The Fresno defendants have met their burden, at the summary judgment stage, of showing there is no evidence to support the imposition of individual liability on Chief Dyer.

Because the Fresno defendants' motion was properly made and supported, Plaintiff "must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984 (quoting *Anderson*, 477 U.S. at 250). Plaintiff fails to meet this burden.

In opposition, Plaintiff submitted a two-paragraph argument (Doc. 93) and a brief declaration to which he attached pages from his deposition transcript where he "describe[d] the Fresno cop shoving his finger up [Plaintiff's] anus" (Doc. 94). Plaintiff has not demonstrated or even suggested that Chief Dyer had any knowledge of or involvement in his arrest or the digital search of his anal cavity to be held individually liable under § 1983. Instead, Plaintiff states that "Sgt. Rodgers" was the person who "thrust his finger up my anus while searching me for drugs" and Plaintiff points out that he recently filed a motion to amend his

complaint to name "Sgt. Rogers" as "Doe I." (Doc. 93 at 1.)
Plaintiff states that he "invoke[s] the legal doctrine of res ipsa
loquiteur (sic), the act speaks for itself." (Doc. 93 at 2.)  The
act, however, does not speak to Chief Dyer's involvement, nor does
the motion to amend.

Plaintiff has not demonstrated that a triable issue of fact
exists as to Dyer's individual liability.[7]  The Fresno defendants'
motion for summary adjudication is **GRANTED** on the ground that Chief
Dyer lacked sufficient involvement to be held individually liable
under § 1983 for the alleged constitutional violations arising from
Plaintiff's arrest and the associated digital search of his anal
cavity.[8]

2. <u>City Of Fresno</u>

In a § 1983 case, a municipality cannot be liable for a
constitutional tort on the basis of *respondeat superior*. *Monell v.
Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).   Rather, "[a]

---

[7] **Although he is proceeding in *pro per*, Plaintiff is not
exempt from the normal requirement, imposed on non-moving litigants
faced with a properly made and supported summary judgment motion,
to set forth specific facts showing a genuine issue for trial. *See
Bias v. Moynihan,* 508 F.3d 1212, 1218-19 (9th Cir. 2007).  As a
non-prisoner *pro per* litigant, Plaintiff "should not be treated
more favorably than parties with attorneys of record" and,
accordingly, summary judgment/adjudication against him is
appropriate even if the district court did not give him specific
prior notice of the requirements of Rule 56. *Jacobsen v. Filler*,
790 F.2d 1362, 1365-67 (9th Cir. 1986).**

[8] **In light of the court's ruling, there is no need to
separately analyze whether qualified immunity shields Chief Dyer
from liability (for damages). Therefore, the Fresno defendants'
motion for summary judgment on qualified immunity grounds is not
addressed.**

municipality may be held liable under § 1983 only where an 'action pursuant to official municipal policy of some nature causes a constitutional tort.'" *Harper v. City of Los Angeles*, 553 F.3d 1010, 1024 (9th Cir. 2008) (*quoting Monell*, 436 U.S. at 691). In other words, "[l]iability may attach to a municipality only where the municipality itself causes the constitutional violation through execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (internal quotation marks omitted).

Absent an express written policy or an admitted custom, there are "three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks omitted).

A local governmental entity may have a policy or custom of inaction. *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (internal citation and quotation marks omitted). A local entity's "failure to train its employees" can create § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom those employees are

13

likely to come into contact." *Id*. (internal quotation marks omitted). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

The Fresno defendants submit undisputed evidence which shows that the City does not have any policy, custom or practice that purportedly caused the alleged constitutional violations. The City has met its burden, at the summary judgment stage, of pointing out that Plaintiff's *Monell* claims are not supported by evidence. "To survive summary judgment on the issue of the City's liability" Plaintiff "must demonstrate that there is a genuine issue of material fact as to whether [the officers involved] acted pursuant to a governmental policy or custom." *Villegas v. Gilroy*, 541 F.3d 950, 964 (9th Cir. 2008). Plaintiff fails to meet this burden.

Plaintiff argues that Sgt Roger's conduct "establishes a civil rights" violation "against the [C]ity of Fresno under the doctrine of respondeat superieur (sic)." (Doc. 93 at 2.) Plaintiff contends that the "City is responsible for [Sgt Roger's] conduct because it occurred when he was on duty as a police officer." (*Id*.) Plaintiff's argument is foreclosed by contrary Supreme Court authority. The City cannot be held liable for Sgt Roger's conduct, or the conduct of any officer involved, under the doctrine of *respondeat superior*. *Monell*, 436 U.S. at 691. Plaintiff also states that he "invoke[s] the legal doctrine of res ipsa loquiteur (sic), the act speaks for itself." (Doc. 93 at 1.) This one act, however,

**14**

does not to speak to the existence of a *Monell* policy, custom or practice that caused it to occur. *See Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989) (recognizing that "[p]roof of random acts or isolated events are insufficient to establish custom"); *see also Menotti*, 409 F.3d at 1147 (stating that "a municipal policy may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded") (emphasis added) (internal quotation marks omitted).[9]

Plaintiff has no evidence to create a triable issue of fact as to the City's *Monell* liability. The Fresno defendants' motion for summary judgment is GRANTED on the ground that Plaintiff lacks sufficient evidence to establish any *Monell* claims against the City arising from Plaintiff's arrest and the associated digital search of his anal cavity.

**B.    The County Defendants**

**1.    Anderson**

Plaintiff has sued Sheriff Anderson in his official capacity as the Sheriff of Madera County. Plaintiff has also sued the County of Madera.  For the reasons discussed above, the official capacity claims against Anderson are redundant of the claims against the County.   Accordingly, summary judgment is GRANTED on the claims against Anderson in his official capacity.

---

[9] **Plaintiff repeats the same *respondeat superior* and *res ipsa loquitur* arguments in a "response" he filed *after* the combined hearing on the motions for summary judgment and motion to dismiss. (Doc. 100.) Although this late filing was not proper, it contained the same meritless arguments as Plaintiff's timely filed opposition.**

With respect to individual liability, the County defendants submit evidence to demonstrate that Anderson lacked the requisite involvement in the alleged constitutional violations to be held individually liable under § 1983. Plaintiff does not dispute any of the material facts that the County defendants have set forth on this issue.

The undisputed facts show that the Madera County Department of Corrections managed and administered the Madera County Jail, and that the Madera County Department of Corrections is an agency separate and apart from the Madera County Sheriff's Department. Anderson, in his role as Sheriff, has never had any oversight responsibilities for the Madera County Department of Corrections and has never established any customs, policies or practices of the Department of Corrections.   Likewise, Anderson has never been responsible for the training, supervision, instruction, oversight or discipline of officers employed by the Department of Corrections.   Anderson was not involved in the any classification or housing decisions in relation to Plaintiff's incarceration at the Madera County Jail, and Anderson had no involvement with Plaintiff in any manner while Plaintiff was at the Madera County Jail. All of these facts are undisputed. (Doc. 62-3 at 2-3.)

The County defendants have met their burden, at the summary judgment stage, of demonstrating an absence of evidence to support the individual liability of Anderson.   The undisputed facts and Anderson's declaration are sufficient to demonstrate that Anderson did not have the requisite involvement in the incarceration of Plaintiff at the Madera County Jail, his placement in the general population and the altercation that ensued, to be held individually

16

liable under § 1983 for any claims arising therefrom.

In opposition, Plaintiff submitted a separate two-paragraph argument (Doc. 92) and a short declaration to which he attached pages from his deposition transcript where he testified "that a fellow prisoner slashed my ear while I was in jail in Madera." (Doc. 92 at 1.) Plaintiff has not demonstrated or even argued that Anderson had sufficient involvement in Plaintiff's incarceration at the Madera County Jail, his placement in the general population and the slashing of his ear, to hold Anderson liable under § 1983.

Plaintiff has not demonstrated that a triable issue exists as to Anderson's individual liability.  The County defendants' motion for summary adjudication is GRANTED on the ground that Anderson lacked sufficient involvement to be held individually liable under § 1983 for the alleged constitutional violations arising from Plaintiff's incarceration at the Madera County Jail, his placement in the general population and the altercation that ensued.[10]

### 2.   The County Of Madera

The Madera defendants submit undisputed evidence which shows that the County does not have any policy, custom or practice that purportedly caused the alleged constitutional violations.   The County has met its burden, at the summary judgment stage, of pointing out that Plaintiff's *Monell* claims against the County lack sufficient evidence.   In opposition, Plaintiff has failed to create a triable issue.

---

[10]   In light of the court's ruling, there is no need to separately analyze whether qualified immunity shields Anderson from liability (for damages).   Therefore, the County defendants' motion for summary judgment on qualified immunity grounds is not addressed.

1      Plaintiff argues that his "sworn [deposition] testimony
2  regarding this occurrence [the slashing of his ear by a fellow
3  prisoner] establishes a civil rights violation against the County
4  of Madera under the doctrine of respondeat superieur (sic), and res
5  ipsa loquiteur, the act speaks for itself. The [C]ounty had a duty
6  to protect me from other prisoners. They failed to do that and
7  should be liable for a civil rights violation." (Doc. 92 at 1.)
8  Plaintiff's arguments lack merit.

9      *Res ipsa loquitur* has no application in a civil rights case.
10  The County of Madera cannot be held liable under the doctrine of
11  *respondeat superior*, *Monell*, 436 U.S. at 691, and the one-time jail
12  altercation involving Plaintiff does not speak to whether the
13  County had the requisite policy, custom or practice.  The fact that
14  an altercation occurred does not create a genuine dispute as to
15  whether an underlying policy, custom or practice is to blame. *See*
16  *Thompson*, 885 F.2d at 1444 (recognizing that "[p]roof of random
17  acts or isolated events are insufficient to establish custom"); *see*
18  *also Menotti,* 409 F.3d at 1147 (stating that "a municipal policy
19  may be inferred from widespread practices or evidence of *repeated*
20  constitutional violations for which the errant municipal officers
21  were not discharged or reprimanded") (emphasis added) (internal
22  quotation marks omitted).[11]

23      Plaintiff has not demonstrated that a triable issue exists as

---

25      [11] **Plaintiff repeats the same *respondeat superior* and *res ipsa
26  loquitur* arguments in a "response" he filed *after* the combined
    hearing on the motions for summary judgment and motion to dismiss.
27  (Doc. 99.) Although this late filing was not proper, it contained
28  the same meritless arguments as Plaintiff's timely filed
    opposition.**

1  to the County's *Monell* liability.  The County defendants' motion

2  for summary judgment is GRANTED on the ground that Plaintiff lacks

3  sufficient evidence to establish any *Monell* claims against the

4  County arising from Plaintiff's incarceration at the Madera County

5  Jail, his placement in the general population and the altercation

6  that ensued.

7                  **V. <u>MOTION TO DISMISS AS A SANCTION</u>**

8          Defendants request that the court dismiss Plaintiff's case as

9  a sanction for his failure to comply with a prior order of the

10  magistrate judge.

11          During discovery Plaintiff failed to appear for a scheduled

12  mental examination.  Subsequently, Defendants collectively filed a

13  motion to compel Plaintiff to submit to a Rule 35 mental

14  examination, and Defendants requested monetary sanctions for

15  Plaintiff's failure to appear at the scheduled examination.  Among

16  other charges, the Defendants were billed $900.00 by the examiner

17  for the time the examiner blocked for the scheduled examination.

18  At the time Defendants filed the motion to compel, Plaintiff was

19  represented by counsel. On November 25, 2008, the magistrate judge

20  granted the motion to compel and required Plaintiff (himself) to

21  pay Defendants $900.00 within thirty (30) days.[12]  The magistrate

22  judge's order warned Plaintiff that a failure to pay the monetary

23  sanction could result in dismissal of his action, among other

24  sanctions. (Doc. 74.)

25          In their current motion to dismiss, Defendants submit evidence

26

27          [12] Plaintiff's counsel at the time, Mr. Nickerson, advised

28  Plaintiff of the monetary sanctions. (Doc. 73 at 2.)

that Plaintiff has not paid the $900.00 monetary sanction.  The defendants request dismissal of Plaintiff's action as a sanction for his failure to comply with the magistrate judge's order.  If dismissal is not warranted, Defendants request that an appropriate sanction be imposed. Plaintiff has not filed an opposition to the motion to dismiss.

At the combined hearing on the motions for summary judgment and the motion to dismiss held on May 11, 2009, Plaintiff was advised that he had not filed an opposition to the motion to dismiss.  Plaintiff was further advised that he had fifteen (15) days to file an opposition in which he needed to explain why he did not pay the $900.00 sanction and why he did not file an opposition on time. Plaintiff was warned that his case would be over if he did not submit an opposition to the motion to dismiss. The fifteen-day period has expired and Plaintiff has not filed an opposition.

Under Rule 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules *or a court order*, a defendant may move to dismiss the action or any claim against it." (Emphasis added.) The Ninth Circuit has "set forth five factors for a district court to consider before resorting to the penalty of dismissal: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998).

In light of the court's ruling with respect to the motions for summary judgment or, in the alternative, summary adjudication, whether this case should be dismissed as a sanction is a moot

issue.    The  claims  against  the  named  individuals,  Dyer  and Anderson,  fail  because  the  official  capacity  claims  are  redundant of  the  claims  against  the  governmental  entities  and  the  evidence  is insufficient  to  create  a  triable  issue  as  to  their  individual liability.    The  claims  against  the  named  local  governmental entities,  the  City  of  Fresno  and  the  County  of  Madera,  fail  because the  evidence  is  insufficient  to  create  a  triable  issue  as  to  their liability  under  *Monell*.    The  end  result  of  the  motions  for  summary judgment  or,  in  the  alternative,  summary  adjudication,  is  that Plaintiff's  action  fails  to  survive  against  any  defendant  named  in the  operative  pleading  (i.e.,  the  Third  Amended  Complaint).

As  discussed  above,  Plaintiff  filed  a  motion  to  amend  his Third  Amended  Complaint  to  add  Sgt  Rogers  as  "Doe  I."    Plaintiff filed  his  motion  to  amend  after  Defendants  filed  the  motions  for summary  judgment  and  the  motion  to  dismiss.    Plaintiff's  motion  to amend  is  not  properly  noticed  and  Plaintiff  was  instructed  at  the May  11  hearing  that  he  had  fifteen  (15)  days  to  get  a  formal  motion to  amend  on  file.[13]  The  fifteen-day  period  has  passed  and  Plaintiff has  not  filed  a  motion  to  amend  his  pleadings.

In  light  of  the  events  that  have  occurred  and  the  ruling  on the  motions  for  summary  judgment  or,  in  the  alternative,  summary adjudication,  rather  than  order  dismissal  as  a  sanction,  a  less drastic  remedy  is  appropriate:  Plaintiff  will  not  be  allowed  to amend  his  complaint.  This  result  is  warranted  for  at  least  three

---

[13]  After  the  May  11  hearing,  Plaintiff  improperly  filed  a Fourth  Amended  Complaint  adding  Sgt  Rogers  as  a  named  defendant (and  dropping  Anderson). This  pleading  is  not  operative.  Plaintiff has  been  expressly  told  in  open  court  that  he  had  to  comply  with the  federal  rules  of  civil  procedure.

1   reasons.

2   First, the scheduling conference order in this case (Doc. 40)
3   established that all non-dispositive motions (such as motions to
4   amend the complaint) must be filed by September 15, 2008. Assuming
5   Plaintiff's motion to amend the complaint serves as a motion to
6   modify the scheduling conference order, see *Johnson v. Mammoth*
7   *Recreations, Inc.*, 975 F.2d 604, 608-09 (9th Cir. 1992), good cause
8   for the modification under Rule 16(b)(4) does not exist as no
9   excuse for delay after close of discovery is shown.  Second, even
10  assuming Plaintiff's motion to amend was properly made, Plaintiff
11  is not entitled to leave to amend under Rule 15(a)(2) as it is
12  dilatory.   Third, precluding Plaintiff from filing an amended
13  complaint is warranted as a sanction for Plaintiff's continued
14  failure to comply with the magistrate judge's order and the failure
15  to comply with the court's order to file an opposition to the
16  motion to dismiss.

17   Federal Rule of Civil Procedure 16(b)(4) provides that a
18  scheduling order "may be modified only for good cause and with the
19  judge's consent." This "'good cause' standard primarily considers
20  the diligence of the party seeking the amendment. The district
21  court may modify the pretrial schedule if it cannot reasonably be
22  met despite the diligence of the party seeking the extension."
23  *Johnson*, 975 F.2d at 609 (internal quotation marks omitted). "If
24  the party seeking the modification was not diligent, the inquiry
25  should end and the motion to modify should not be granted."
26  *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)
27  (internal quotation marks omitted).

28   The scheduling conference order (Doc. 40) set the non-

dispositive motion deadline at September 15, 2008.  This order was entered on November 29, 2007.  At the time of the scheduling conference order, Plaintiff had already amended his complaint twice before and his Third Amended Complaint was (and remains) the operative pleading.  The non-expert discovery in this case closed on September 30, 2008, the expert witness designations were due October 10, 2008, supplemental expert designations were due October 24, 2008, and November 7, 2008, marked the expert discovery cut-off.

More than six months after the date set for non-dispositive motions (September 15, 2008), and more than five months after the close of all discovery, Plaintiff filed (on April 15, 2009) a motion to amend his Third Amended Complaint to add Sgt. Rogers as a defendant.

Plaintiff, the party seeking the amendment, was not diligent. Accordingly, the "inquiry should end" and modification should be precluded. *Zivkovic*, 302 F.3d at 1087. In addition to a lack of diligence, "prejudice to the party opposing the modification" may supply additional reasons to deny modification. *Johnson*, 975 F.2d 609. If a modification were allowed and Plaintiff permitted to amend his Third Amended Complaint to add Sgt. Rogers, this would necessitate further discovery (and delay the proceedings). "The requirement of additional discovery," *Zivkovic,* 302 F.3d at 1087, would be prejudicial to Defendants.

"Good cause" does not exist to modify the scheduling order to permit the filing of Plaintiff's motion to amend.  For this reason, Plaintiff cannot amend his complaint. Apart from the lack of good

cause to modify the scheduling order, Plaintiff is not entitled to leave to amend under Rule 15(a)(2).

Under Rule 15(a)(2) a party may amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Ordinarily, "[i]t is generally our policy to permit amendment with extreme liberality, [but] when a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad." *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (internal citation and quotation marks omitted). Previously, Plaintiff was granted leave to file an amended complaint (i.e., his Third Amended Complaint).

Under Rule 15(a)(2), several "factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Application of these factors warrants a denial of leave to amend.

Plaintiff has shown bad faith by not paying the monetary sanction and ignoring the order of the magistrate judge, and by not following the directive of this court to file an opposition to Defendants' motion to dismiss and to explain therein why he has not paid the monetary sanction. Plaintiff also filed his motion to amend after Defendants moved for summary judgment and after they filed their motion to dismiss. Plaintiff's tactic is reflective of bad faith. *See Lockheed Martin Corp. v. Network Solutions, Inc.*,

24

194 F.3d 980, 986 (9th Cir. 1999) (concluding that the plaintiff showed bad faith when the plaintiff, "facing a summary judgment motion," "sought to amend its complaint to add causes of action on which discovery had not been undertaken.").

With respect to undue delay, Plaintiff has already filed three complaints in this action. Plaintiff now seeks to amend his complaint yet again months after the deadline for non-dispositive motions and several months after the close of discovery. This undue delay militates in favor of denying leave to amend.

As to prejudice, if Plaintiff were permitted to amend his complaint to add Sgt Rogers, this would necessitate a reopening of discovery and delay the timely disposition of this case. Accordingly, Defendants would be unfairly prejudiced by the amendment. *See Lockheed Martin Corp.*, 194 F.3d at 986 ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint."); *see also Zivkovic*, 302 F.3d at 1087 ("The requirement of additional discovery would have prejudiced [the defendant] and delayed the proceedings.").

As to whether Plaintiff has previously amended the complaint, Plaintiff has previously amended the complaint on three occasions. Plaintiff now seeks to file a fourth complaint.

Application of the relevant factors leads to the conclusion that leave to amend under Rule 15 should not be, and is not, permitted.

Even part from the impropriety of leave under Rule 15, and apart from the lack of good cause to modify the scheduling order,

a denial of leave to amend is an appropriate sanction for Plaintiff's continued failure to obey the magistrate judge's order, and Plaintiff's failure to follow this court's directive to file an opposition to the motion to dismiss and to explain therein why Plaintiff has not paid the monetary sanction.

When a "court order is violated," the violator, who must be held accountable, interferes with the "court's [ability] to [efficiently] manage its docket" and "the public's interest in expeditious resolution of litigation." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). Plaintiff, even though he is representing himself, cannot flout the magistrate judge's order and yet continue to litigate in federal court. Accordingly, a sanction which precludes Plaintiff from filing an amended complaint, which is a less drastic sanction than dismissal, is warranted.

## VI. CONCLUSION

For the foregoing reasons:

1.   Summary judgment as to any claim against Dyer or Anderson in their official capacities is GRANTED.

2.   The Fresno defendants' motion for summary adjudication is GRANTED on the ground that Dyer lacked sufficient involvement to be held individually liable under § 1983 for the alleged constitutional violations arising from Plaintiff's arrest and the associated digital search of his anal cavity.

3.   The Fresno defendants' motion for summary judgment is GRANTED on the ground that Plaintiff lacks sufficient evidence to establish any *Monell* claims against the City for the alleged

26

constitutional violations arising from Plaintiff's arrest and the associated digital search of his anal cavity.

**4.**   The County defendants' motion for summary adjudication is GRANTED on the ground that Anderson lacked sufficient involvement to be held individually liable under § 1983 for the alleged constitutional violations arising from Plaintiff's incarceration at the Madera County Jail, his placement in the general population and the altercation that ensued.

**5.**   The County defendants' motion for summary judgment is GRANTED on the ground that Plaintiff lacks sufficient evidence to establish any *Monell* claims against the County for the alleged constitutional violations arising from Plaintiff's incarceration at the Madera County Jail, his placement in the general population and the altercation that ensued.

**6.**   Plaintiff is not permitted to amend his complaint to add Sgt Rogers or otherwise.  Accordingly, his improperly filed motion to amend the complaint (Doc. 91) is DENIED and his inoperative Fourth Amended Complaint (Doc. 102) is STRICKEN.

IT IS SO ORDERED.

**Dated:   July 22, 2009**            **/s/ Oliver W. Wanger**
                                  UNITED STATES DISTRICT JUDGE

27